UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMERSET STUDIOS, LLC; GAIL A. STOFFER,<br><br>             Plaintiffs,<br><br>     v.<br><br>SCHOOL SPECIALTY, INC.; DOES 1-10,<br><br>             Defendants.<br>_____/ | No. C 10-5527 MEJ<br><br>**DISCOVERY ORDER RE: DKT. NOS. 19-21** |

Pending before the Court are three joint discovery dispute letters filed on September 7, 2011. Dkt. Nos. 19-21. Having considered the parties' arguments, the Court rules as follows.

## I. BACKGROUND

The following factual background is taken from Plaintiffs Somerset Studios and Gail Stoffer's Complaint, which was removed to this Court on December 6, 2010. Compl., Dkt. No. 1-1. Plaintiffs[1] are in the business of supplying and installing school, auditorium, and theatre equipment and supplies, and theatre renovation. Compl. ¶ 13. Plaintiffs allege that they entered into a number of contracts with Defendant School Specialty, Inc. ("Defendant") to install seating in various schools and other facilities throughout California. *Id.* ¶ 16. On May 12, 2008, nine of Plaintiffs' former employees filed a lawsuit against Plaintiffs, seeking damages for alleged wage and hour violations. *Id.* ¶ 30. Plaintiffs reached a monetary settlement with the former employees, which has been paid in full. *Id.* ¶ 31. As part of the settlement, Plaintiffs must also pay amounts to their other employees who worked on the jobs at issue in the underlying litigation. *Id.* ¶ 32. Plaintiffs allege that over 40

---

[1] Prior to formation of Somerset Studios on May 27, 2007, the company existed as Gail Stoffer dba Somerset Studios. Compl. ¶ 2. Stoffer and Somerset are collectively referred to herein as "Plaintiffs."

1    of the projects that were a subject of the former employees' lawsuit were projects that Plaintiffs
2    entered into as a subcontractor to Defendant. *Id.* ¶ 34.
3        Under California Labor Code sections 1770-71, except for Public Works projects of $1,000
4    or less, all workers employed on public works are to be paid not less than the general prevailing
5    wage, as determined by the Director of the Department of Industrial Relations. Plaintiffs allege that
6    some of the contracts they entered into with Defendant were Public Works projects that required the
7    contractor and subcontractor to pay any worker employed on the project no less than the state
8    prevailing wage. Compl. ¶ 17. However, Plaintiffs contend that it was Defendant's regular practice
9    not to provide the master contract issued to Defendant, and thus, Plaintiffs had no first-hand
10   knowledge of whether the awarding body required payment of the prevailing wage on the project.
11   *Id.* ¶ 21. Plaintiffs allege that Defendant told them that certain projects were not subject to payment
12   of prevailing wage laws, but Defendant should have known, based on its relationship with the
13   awarding body, that these contracts were actually subject to the prevailing wage laws. *Id.* ¶¶ 24, 29.
14   Thus, Plaintiffs allege that Defendant has an equitable duty to indemnify them for damages,
15   attorney's fees, and costs incurred by Plaintiffs in defending and settling the action brought by their
16   former employees. *Id.* ¶ 39.
17       In their Complaint, Plaintiffs bring causes of action for: (1) Implied Contractual Equitable
18   Indemnity; (2) Negligent Misrepresentation; (3) Breach of Contract; and (4) Declaratory Relief. The
19   parties are now before the Court seeking resolution of three separate discovery disputes. The Court
20   shall consider each in turn.

21                              **II.  DISCOVERY DISPUTES**
22   **A.    Plaintiffs' Motion to Quash or Modify Service of Subpoenas**
23       In the parties' first letter, Plaintiffs seek to quash two subpoenas and modify two subpoenas
24   served by Defendant on four non-parties to this litigation. Jt. Letter, Ex. A, at 1, Dkt. No. 19.
25   Plaintiffs seek to quash subpoenas served on two private contractors who are not a party to this
26   dispute - Krueger International, Inc. ("Krueger") and Sierra School Equipment Company ("Sierra") -
27   and whose work is not part of this litigation. *Id.* Plaintiffs also seek to limit the subpoenas of two
28

2

public entities - University of California, Berkeley ("Berkeley") and San Francisco Unified School District ("SFUSD") - who are not parties to this dispute, but whose projects are part of this litigation. *Id.* Defendant's subpoenas seek documents which relate to any work performed by Plaintiff Somerset from 2002 to the present, including correspondence, contracts, purchase orders, invoices, payroll records, time records, work inspection reports, and records of payment for work performed. *Id.*

Plaintiffs objected to these subpoenas based on the date range because their Complaint only alleges that Defendant is liable for damages for actions that took place from January 1, 2003 through October 31, 2009. *Id.* Plaintiffs further objected to the subpoenas served on Krueger and Sierra because these contractors are not parties to this litigation and any work that Plaintiffs performed for them is not relevant to the damages that Plaintiffs allege Defendant caused in this case. *Id.* In regard to the subpoenas to the two public entities, Plaintiffs do not object to the extent that they seek documents related to the projects which Plaintiffs performed for Defendant, but do object to documents related to projects which Plaintiffs performed for other contractors. *Id.* Plaintiffs also argue that the documents Defendant seeks from Krueger and Sierra contain confidential and proprietary information, which would provide Defendant a competitive edge in their quest for public entity contracts in California. *Id.* at 3.

In response, Defendant argues that the subpoenas are directly relevant to Plaintiffs' claims for indemnity and negligent misrepresentation. *Id.* Defendant contends that, although Plaintiffs claim they have not included damages from non-School Specialty jobs in their indemnity claim, that issue is very much in dispute. *Id.* at 4. Specifically, Plaintiffs attribute roughly 77% of damages incurred in the former employees' action to Defendant, yet Defendant contends that this is vastly overblown and without merit. *Id.* Defendant argues that the requested documents will help show that the former employees were cheated on their wages on as many, if not more jobs performed for other contractors and public entities, and that by denying discovery on this issue, Plaintiffs are attempting to deprive Defendant of the means to prove that much less than 77% of the damages incurred are attributable to it. *Id.* Defendant further argues that the documents will help show that

3

Plaintiffs' payroll practices and their method of paying employees in cash to hide the fact that they were violating California law was the cause of Plaintiffs' damages. *Id.*

Defendant maintains that information concerning the work performed by Plaintiffs for Krueger, Sierra, Berkeley, and SFUSD is also relevant to the reasonableness of Plaintiffs' reliance on Defendant for prevailing wage information. *Id.* Defendant argues that Plaintiffs' theory of the case - that if Defendant did not tell them explicitly that they had to pay prevailing wage, then they have no responsibility whatsoever - is patently false and can be disproved by their work for others. *Id.* Defendant contends that the requested documents will demonstrate that Plaintiffs had extensive knowledge concerning prevailing wage requirements and projects in California, and they did not rely on Defendant to inform them whether a project required payment of the prevailing wage. *Id.* at 4-5.

Finally, Defendant also argues that the requested information is relevant to the causation element of Plaintiffs' negligent misrepresentation claim and Defendant's unclean hands defense. *Id.* at 5. Defendant contends that Plaintiffs refused to pay prevailing wage to their employees regardless of whether they were informed of the prevailing wage requirement. *Id.* Defendant thus argues that the requested documents will demonstrate that Plaintiffs were aware of the prevailing wage requirement and failed to pay it even when they were informed of such requirement. *Id.*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Civil Procedure ("Rule") 45, any party may serve a subpoena commanding a non-party to give testimony or produce documents. Fed. R. Civ. P. 45(a)(1)(C). A subpoena is sufficiently limited and specific in its directive where compliance to its terms would not be unreasonably burdensome. *United States v. Palmer*, 536 F.2d 1278, 1282 (9th Cir. 1976). The court must use its discretion to determine whether this standard has been satisfied. *United States v. George*, 883 F.2d 1407, 1418 (9th Cir. 1989). If a subpoena is overly broad and burdensome, the court may, on its own initiative, modify the language in order to correct the ambiguity and prevent the undue burden. *Westside Ford v. United States*, 206 F.2d 627, 635 (9th Cir. 1953) (citation omitted); Fed. R. Civ. P. 45(c)(3)(A)(iv).

4

Upon review of the parties' arguments, the Court finds the requested discovery appropriate. The documents subpoenaed here could be used to support Defendant's affirmative defenses that Plaintiffs have not included damages from non-School Specialty jobs in their indemnity claim, and that the former employees were cheated on their wages on jobs performed for other contractors and public entities. Defendant should not be expected to accept Plaintiffs' assertion that it has already provided Defendant with all the information it needs; that is the purpose of discovery.

The Court also finds that this information is relevant to the reasonableness of Plaintiffs' reliance on Defendant for prevailing wage information. "Since justifiable reliance is an essential element of a cause of action for negligent misrepresentation, then, without it, plaintiffs' claims must fail." *Blankenheim v. E. F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1473 (1990) (citation omitted). If the conduct of a party in light of his own intelligence and information was manifestly unreasonable, he will be denied recovery; he may not put faith in representations which are shown by facts within his own observation "to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth." *Id.* at 1474 (internal quotations and citation omitted). Here, the requested documents could show that Plaintiffs were aware of the prevailing wage rules; thus, they are relevant to the issue of justifiable reliance.

Further, the Court is troubled by Plaintiffs' argument in the joint letter that "Defendant wishes to adopt [the former employees'] theory of their case, but it is just not true . . . . Defendant cannot re-litigate the underlying law suit. It was hard fought on both sides and settled. Maybe Defendant's counsel could have done a better job for Plaintiff but he was not their counsel." *Id.* at 3. It appears that Plaintiffs are asking this Court to accept their theory of the case here, without giving Defendant an opportunity to investigate their claims, based on a former case that settled without resolution of any of the factual and legal issues involved. This is not an acceptable reason to deny discovery. Accordingly, the Court finds Plaintiffs' argument is without merit.

Based on this analysis, the Court shall permit Defendant to serve its subpoenas. However, Defendant has failed to demonstrate why it needs documents from 2002 to the present, given Plaintiffs' allegation that Defendant is liable for damages for actions that took place from January 1,

1  2003 through October 31, 2009. As Defendant has not shown that documents from a specific time
2  period are needed, the Court finds that the nearly-seven-year period from January 2003 through
3  October 2009 will provide the information Defendant seeks, if it exists.

**B.     Depositions of Gail Stoffer and Martha Mendoza**

In the parties' second letter, Defendant requests that the depositions of Plaintiff Gail Stoffer and Somerset Studios' bookkeeper Martha Mendoza be extended from one day of 7 hours to 14 hours or two days for each deposition. Jt. Letter at 1, Dkt. No. 20. Defendant argues that Stoffer and Mendoza have extensive knowledge concerning the projects performed by Somerset Studios between 2002 and 2009, as well as how Somerset Studios compensated their employees for work performed on each of these projects. *Id.* at 2. Defendant contends that the complexity of the issues and the sheer volume of documents that need to be reviewed with Stoffer and Mendoza establish good cause for the requested extension. *Id.* In support of this argument, Defendant states that there are almost $2 million in damages at issue here, concerning roughly 120 separate projects that Plaintiffs performed for School Specialty. *Id.* at 1. In addition, Defendant contends that there are some 100 non-School Specialty projects that Plaintiffs performed during the timeframe that the former employees worked for Plaintiffs, and that these projects are all relevant to the indemnity claim. *Id.* at 2.

In response, Plaintiffs argues that Defendant's request is just one more harassing tactic that it has attempted to use in this litigation and is not supported by good cause. *Id.* Plaintiffs contend that Defendant's stated reason for the request, that the two deponents have extensive knowledge about the subject of the litigation, is probably true of all depositions, but still the rules have set seven hours as the cut off for depositions. *Id.* at 4.

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). The Court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent. *Id.* The reference to Rule 26(b)(2) requires the Court to limit the use of any discovery method if (1) the discovery is unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, or less

burdensome or less expensive; (3) the party has had ample opportunity to obtain the information sought; or (4) the burden or expense of the proposed discovery outweighs its unlikely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2). "In weighing these factors, and applying them to whether a deposition should be longer than seven hours, the court should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit should be the exception, not the rule." *Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007).

Upon review of the parties' arguments, the Court finds that Defendants have not shown good cause exists to double the length of Stoffer's and Mendoza's depositions. As Plaintiffs rightly point out, although Defendant contends that the two deponents have extensive knowledge about the subject of this litigation, the same is probably true of many depositions. Further, given that Plaintiffs and Defendant are both taking depositions based on the same number of projects, and Plaintiffs have not asked for an extension of deposition time, Defendant's generalized argument regarding the number of projects at issue does not overcome the presumption that any extension of Rule 30(d)(1)'s limitation should be the exception and not the rule. Finally, the Court notes that "the better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period. If the parties cannot reach a stipulation, then Court intervention may be sought." *Malec v. Trustees of Boston College*, 208 F.R.D. 23, 24 (D. Mass. 2002). Accordingly, Defendant's request is DENIED.

**C.     Defendant's Request for Production of Documents**

In the parties' third letter, Defendant seeks to compel the production of the following unredacted documents from Plaintiffs" (1) documents relating to purchase order, invoices, and contracts between Plaintiffs and other entities, besides Defendant, from 2003 to 2009; (2) all unredacted Certified Payroll Reports prepared by Plaintiffs from 2003 to 2009; and (3) all unredacted payroll document, including check registers, payroll reports and timecard records

1 (including weekly timecard reports) concerning all of Plaintiffs' employees between 2003 and 2009.
2 Jt. Letter at 1, Dkt. No. 21. Defendant contends that Plaintiffs' losses were entirely the result of
3 their own violations of multiple labor and employment laws, and had nothing to do with what
4 Defendant did or did not tell them about the projects. *Id.* Defendant contends that although the
5 documents produced in the action brought by Plaintiffs' former employees were limited in time to
6 2003-2006 and heavily redacted, they show that Plaintiffs implemented a "cash kickback" scheme,
7 paying employees partly by check and partly by cash to evade paying overtime and the proper wage.
8 *Id.* at 2. Defendant alleges that Plaintiffs utilized two sets of payroll records: one set submitted to a
9 third party payroll service firm, and a second set in which they recorded all hours worked after over
10 40 hours of overtime and the employee's actual pay. *Id.*

11 Defendant argues that, under the doctrine of implied contractual indemnity, the jury will
12 have to decide how much of the alleged damages is attributable to Plaintiffs' failure to pay its
13 employees properly and how much is attributable to Defendant. Thus, Defendant contends that the
14 ultimate issue is what caused Plaintiffs' damages - their alleged failure to comply with California's
15 wage and hour laws or the alleged misrepresentation by Defendant. *Id.* Defendant further argues
16 that Plaintiffs are seeking damages for alleged owed wages to employees who were not part of the
17 settled lawsuit, and payroll records concerning these individuals are relevant to determine this
18 amount. *Id.* at 3.

19 In response, Plaintiffs argue that work done by them for other contractors is not relevant
20 because they only seek damages related to work done for Defendant. *Id.* Plaintiffs contend that they
21 have produced all of the documents and expert reports from the underlying litigation which show
22 what the parties relied upon in reaching their settlement and how they reached their settlement
23 amount. *Id.* at 4.

24 Rule 34(a) provides, in relevant part, that a party may serve on any other party a request to
25 produce and to permit the inspection and copying of items within the responding party's
26 "possession, custody or control." Fed. R. Civ. P. 34(a)(1). The party responding to a request for
27 production of documents has an obligation to conduct a reasonable inquiry into the factual basis of
28

8

its responses to the request to produce documents. Fed. R. Civ. P. 34.

Here, the Court finds that Defendant is entitled to the requested discovery. "In general, indemnity refers to 'the obligation resting on one party to make good a loss or damage another party has incurred.'" *Prince v. Pacific Gas & Elec. Co.*, 45 Cal.4th 1151, 1157 (2009) (quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 628 (1975)). There are two basic types of indemnity: express indemnity, which is indemnity expressly provided for by contract, and equitable indemnity. *Id.* at 1157. "Equitable indemnity applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." *United Servs. Auto. Ass'n v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 644-45 (2001) (citation and internal quotation marks omitted). "The ultimate determination of whether or not indemnity should be allowed depends upon the circumstances of each case, and is generally a factual question." *Aetna Life & Cas. Co. v. Ford Motor Co.*, 50 Cal. App. 3d 49, 53 (1975) (citations omitted).

Based on this standard, the Court finds that Defendant is entitled to discovery which could help establish its defense that Plaintiffs' damages resulted from their own violations of labor and employment laws. Defendant's document requests appear relevant to this determination, and it is not up to Plaintiffs to determine the limitations of Defendant's defense. Further, Plaintiffs themselves state in their Complaint that as part of the settlement in the underlying litigation, they must pay damages to employees not involved in the litigation. Compl. ¶ 32. As such, it is unclear how production of payroll records and ledgers that redact the name of every employee who was not part of the underlying litigation satisfies Plaintiffs' discovery obligations in this case.

Accordingly, Defendant's request for production of unredacted documents is GRANTED.

### III.   CONCLUSION

Based on the analysis above, the Court ORDERS as follows:

1) Plaintiffs' request to quash the subpoenas issued to Krueger, Sierra, Berkeley, and SFUSD is DENIED. However, the production period shall be limited to January 1, 2003 through October 31, 2009. This Order shall not be construed as limiting any third party's right to bring a separate request to quash, in compliance with the undersigned's discovery standing

order.

2) Defendant's request that the depositions of Gail Stoffer and Martha Mendoza be extended to 14 hours is DENIED.

3) Defendant's request for production of documents is GRANTED.  Plaintiffs shall produce unredacted copies of: (1) documents relating to purchase order, invoices, and contracts between Plaintiffs and other entities, besides Defendant, from 2003 to 2009; (2) all unredacted Certified Payroll Reports prepared by Plaintiffs from 2003 to 2009; and (3) all unredacted payroll document, including check registers, payroll reports and timecard records (including weekly timecard reports) concerning all of Plaintiffs' employees between 2003 and 2009.

4) The parties shall prepare and file a proposed protective order governing discovery in this matter.

**IT IS SO ORDERED**

Dated: September 14, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge